# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DISCOVERY GLOBAL CITIZENS MASTER FUND LTD., et al., | Civil Action No. 16-7321 (MAS)(LHG) |
| | **(ORAL ARGUMENT REQUESTED)** |
| Plaintiffs, | **Motion Day:  September 5, 2017** |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

(captions continue on next page)

---

## PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS VALEANT'S, SCHILLER'S, AND PEARSON'S PARTIAL MOTIONS TO DISMISS PLAINTIFFS' COMPLAINTS

---

Lawrence M. Rolnick
Marc B. Kramer
Thomas E. Redburn, Jr.
Sheila A. Sadighi
Michael J. Hampson
**LOWENSTEIN SANDLER** LLP
One Lowenstein Drive
Roseland, New Jersey 07068
Tel. 973.597.2500
Fax 973.597.2400
lrolnick@lowenstein.com
mkramer@lowenstein.com
tredburn@lowenstein.com
ssadighi@lowenstein.com
mhampson@lowenstein.com
*Attorneys for Plaintiffs*

MSD TORCHLIGHT PARTNERS, L.P., et al.,

                          Plaintiffs,

       v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,

                          Defendants.

**Civil Action No. 16-7324(MAS)(LHG)**

---

BLUEMOUNTAIN FOINAVEN MASTER FUND L.P., et al.,

                          Plaintiffs,

       v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,

                          Defendants.

**Civil Action No. 16-7328(MAS)(LHG)**

---

INCLINE GLOBAL MASTER LP, et al.,

                          Plaintiffs,

       v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,

                          Defendants.

**Civil Action No. 16-7494(MAS)(LHG)**

| | |
|---|---|
| VALIC COMPANY I, et al., | **Civil Action No. 16-7496(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| JANUS ASPEN SERIES, et al., | **Civil Action No. 16-7497(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

**PAGES**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .................................................................................................................. 3

STANDARD OF REVIEW ................................................................................................. 9

ARGUMENT ....................................................................................................................... 9

I.     PLAINTIFFS HAVE ADEQUATELY PLED ACTUAL RELIANCE
       UNDER SECTION 18 OF THE EXCHANGE ACT ........................................... 9

II.    PLAINTIFFS' SECTION 18 CLAIMS ARE TIMELY .................................... 16

III.   UNDER SECTION 10(B), THE FRAUD-ON-THE-MARKET
       PRESUMPTION CONTINUES TO APPLY FOR SECURITIES
       PURCHASES MADE AFTER OCTOBER 30, 2015 ........................................ 17

IV.    SLUSA HAS NO APPLICATION TO PLAINTIFFS' INDIVIDUAL
       ACTIONS ............................................................................................................ 22

V.     PLAINTIFFS HAVE ADEQUATELY PLED A CAUSE OF ACTION
       FOR NEGLIGENT MISREPRESENTATION UNDER NEW JERSEY
       LAW ..................................................................................................................... 28

CONCLUSION ................................................................................................................. 30

## TABLE OF AUTHORITIES

PAGES

CASES

*In re Able Labs. Sec. Litig.*,
   No. 05-cv-2681-JLL-JAD, 2008 WL 1967509 (D.N.J. Mar. 24, 2008) ......................11, 13, 15

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ....................................................................................................17

*Amorosa v. Ernst & Young LLP*,
   682 F. Supp. 2d 351 (S.D.N.Y. 2010) .........................................................................25

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) .....................................................................................20

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
   315 F. Supp. 2d 666 (E.D. Pa. 2004) .....................................................................12, 20

*Barnebey v. E.F. Hutton & Co.*,
   715 F. Supp. 1512 (M.D. Fla. 1989) ............................................................................17

*In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. 2014) .....................................................................13, 14

*Begay v. United States*,
   553 U.S. 137 (2008) ....................................................................................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................9

*Bogart v. Nat'l Community Banks, Inc.*,
   No. 90-cv-5032-HAA, 1992 WL 203788 (D.N.J. Apr. 25, 1992) ....................................28, 29

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*,
   No. 16-cv-80056 (S.D. Fla. June 29, 2016) .................................................................17

*CALPERS v. ANZ Sec., Inc.*,
   137 S.Ct. 2042 (2017) .............................................................................................16, 17

*Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc.*,
   638 A.2d 1288 (N.J. 1994) ...........................................................................................30

*CSX Transp., Inc. v. Alabama Dept. of Revenue*,
   131 S.Ct. 1101 (2011) ..................................................................................................24

*Cullen v. Margiotta*,
   811 F.2d 698 (2d Cir. 1987) .........................................................................................17

ii

*In re Discovery Labs. Sec. Litig.*,
No. 06-cv-1820, 2006 WL 3227767 (E.D. Pa. Nov. 1, 2006) .................................................22

*In re Enzymotec Sec. Litig.*,
No. 14-5556 (JLL) (MAH), 2015 WL 8784065 (D.N.J. Dec. 15, 2015)....................18, 19, 21

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)...................................................................................................9

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000)..................................................................................................19

*Gould v. Winstar Commc'ns, Inc.*,
692 F.3d 148 (2d Cir. 2012)............................................................................................10, 13

*Handron v. Sec. Dept. of Health & Hum. Svcs.*,
677 F.3d 144 (3d Cir. 2012)..................................................................................................24

*Highlands Ins. Co v. Hobbs Grp., LLC.*,
373 F.3d 347 (3d Cir. 2004)..................................................................................................30

*Instituto De Prevision Militar v. Merrill Lynch*,
546 F.3d 1340 (11th Cir. 2008) ............................................................................................25

*Kaufman v. i-Stat Corp.*,
754 A.2d 1188 (N.J. 2000)....................................................................................................30

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
842 F. Supp. 2d 587 (S.D.N.Y. 2012)..............................................................................25, 27

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
861 F. Supp. 2d 262 (S.D.N.Y. 2012)...................................................................................25

*LLDVF, L.P. v. Dinicola*,
No. 09-cv-1280-JLL-CCC, 2010 WL 3210613 (D.N.J. Aug. 12, 2010) ...........................10, 11

*Lovallo v. Pacira Pharmaceuticals, Inc.*,
No. 14-cv-06172-WHW-CLW, 2015 WL 7300492 (D.N.J. Nov. 18, 2015) .............19, 20, 22

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
801 F. Supp. 2d 41 (E.D.N.Y. 2011) ........................................................................12, 14, 15

*In re MDC Hldgs. Sec. Litig.*,
754 F.Supp. 785 (S.D. Cal. 1990)..........................................................................................12

*In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*,
MDL No. 1658 (SRC), 2011 WL 3444199 (D.N.J. Aug. 8, 2011) ...........................19, 20, 21

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) .................................................................................................19

*Merrill, Lynch, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006) ...................................................................................................23, 27

*In re Midlantic Corp. Sec. Litig.*,
    758 F. Supp. 226 (D.N.J. 1990) ......................................................................................28, 29

*In re ORFA Sec. Litig.*,
    654 F. Supp. 1449 (D.N.J. 1987) ..........................................................................................28

*People Express Airlines v. Consol. Rail Corp.*,
    495 A.2d 107 (N.J. 1985) .................................................................................................29, 30

*Pinker v. Roche Hldgs.*,
    292 F.3d 361 (3d Cir. 2002) ...................................................................................18, 20, 21

*Prudential Ins. Co. of Am. v. Bank of Am.*,
    No. 13-cv-1586-SRC-CLW, 2015 WL 502039 (D.N.J. Feb. 5, 2015) ....................................29

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) ..................................................................................................22

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) ...............................................................................13, 14

*Stichting Pensioenfonds ABP v. Merck & Co.*,
    No. 05-cv-5060-SRC, 2012 WL 3235783 (D.N.J. Aug. 1, 2012) .........................................25

*In re Stone & Webster, Inc. Sec. Litig.*,
    414 F.3d 187 (1st Cir. 2005) ...................................................................................................9

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ......................................................................................... passim

*Urbach v. Sayles*,
    779 F. Supp. 351 (D.N.J. 1991) ............................................................................................28

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
    No. 15-cv-07658-MAS-LHG, 2017 WL 1658822 (D.N.J. Apr. 28, 2017) ........................1, 18

*Ventura v. AT&T Corp.*,
    No. 05-cv-5718, 2006 WL 2627979 (S.D.N.Y. Sept. 13, 2006) ............................................25

*Wallace v. Systems & Computer Technology Corp.*,
    1997 WL 602808 (E.D. Pa. Sept. 23, 1997) .........................................................................20

*Witriol v. Conexant Sys., Inc.*,
    No. 04-cv-6219-SRC-CCC, 2006 WL 3511155 (D.N.J. Dec. 4, 2006) ..................................11

*WM High Yield Fund v. O'Hanlon*,
    No. 04-cv-3423, 2005 WL 6788446 (E.D. Pa. May 13, 2005).........................................11, 12

*Yates v. United States*,
    135 S.Ct. 1074 (2015)...................................................................................................24, 25

*Zazzali v. Alexander Partners LLC*,
    No. 12-cv-828, 2013 WL 5416871 (D. Del. Sept 25, 2013)...................................................12

## STATUTES

15 U.S.C. § 77m ...................................................................................................................16

15 U.S.C. § 78bb..........................................................................................................23, 24, 26

15 U.S.C. § 78r ...........................................................................................................9, 16, 17

## RULES

Fed. R. Civ. P. 8 ...........................................................................................................9, 10, 14

Fed. R. Civ. P. 9 ...............................................................................................................14, 15

Fed. R. Civ. P. 12 .............................................................................................................13, 15

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (6th ed. 1990) ..................................................................................24

Restatement (Second) of Torts, § 552...........................................................................................30

Plaintiffs[1] respectfully submit this omnibus memorandum of law in opposition to the partial motions to dismiss filed by Defendants Valeant Pharmaceuticals International, Inc. ("Valeant" or the "Company"), Howard B. Schiller ("Schiller") and J. Michael Pearson ("Pearson" and, collectively with Valeant and Schiller, "Defendants").

## PRELIMINARY STATEMENT

This Court has already held that investors in Valeant securities who – like Plaintiffs – suffered damages in 2015 and 2016 as a result of Defendants' materially false and misleading statements can pursue securities fraud claims against Defendants.  *See In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-07658-MAS-LHG, 2017 WL 1658822 (D.N.J. Apr. 28, 2017). In light of that decision, Defendants do not challenge the core of Plaintiffs' allegations against them, and this case will move forward into discovery regardless of the outcome of Defendants' motions.  Nevertheless, Defendants attempt to chip away at the fringes of Plaintiffs' individual actions by moving for partial dismissal of Plaintiffs' respective operative Complaints.  All of Defendants' arguments for partial dismissal are without merit and should be rejected.

*First*, the actual reliance element of Plaintiffs' Section 18 claims is adequately pled.  The Complaints allege that in making their decisions to invest in Valeant securities, Plaintiffs – acting through flesh-and-blood human beings – actually read, reviewed, and relied on Defendants' materially misleading statements.  Defendants' assertion that Plaintiffs must somehow "link" the misstatements on which they relied to specific purchases of Valeant

---

[1] The identities of the specific Plaintiffs are listed in Appendix A to this Brief.  "Rolnick Decl." refers to the Declaration of Lawrence M. Rolnick filed herewith.  "Valeant Br." refers to the Omnibus Memorandum of Law in Support of Valeant's Partial Motions to Dismiss Plaintiffs' Complaints.  "Schiller Br." refers to the Brief in Support of Defendant Howard B. Schiller's Omnibus Partial Motion to Dismiss Plaintiffs' Complaints.  This brief is also submitted in response to the Joinder filed by Defendant Pearson, which relies on Valeant's arguments. Pearson did not submit a separate brief.

securities on a transaction-by-transaction basis is not only divorced from reality, but also contrary to the law in this Circuit. All that is required is for Plaintiffs to identify the specific statements in Valeant's SEC filings on which they relied, which they have done.

*Second*, Plaintiffs' Section 18 claims are not partially time-barred. Section 18's three-year limitations period is not a statute of repose because it runs from the date of accrual of the cause of action, not from the date of the last culpable act. Thus, the portion of Plaintiffs' Section 18 claims based on purchases of Valeant securities made more than three years prior to the filing of the actions was tolled as a result of the filing of the class action, and is not time-barred.

*Third*, Defendants' reliance on the "truth-on-the-market" defense to argue that purchases made after October 30, 2015, are not actionable is misplaced. The Complaints allege that the entirety of Defendants' fraudulent activities was not revealed to the market until well into 2016. Thus, purchases made by Plaintiffs after October 30, 2015, were still executed at a price that reflected the effects of Defendants' misrepresentations. Defendants' do not come close to conclusively establishing the highly fact-intensive truth-on-the-market defense.

*Fourth*, Plaintiffs' common law negligent misrepresentation claims are not subject to dismissal under the Securities Litigation Uniform Standards Act ("SLUSA"). None of Plaintiffs' actions is a "covered class action" under SLUSA because their cases are not consolidated or joined with the class action, the other four individual actions or, for that matter, even each other. Plaintiffs' individual actions are on a separate procedural track from the class action and are not even being "coordinated" with that action or the other individual actions. Indeed, Plaintiffs have resisted Defendants' attempts to formally coordinate their actions with the class action. SLUSA, therefore, does not apply.

*Finally*, Plaintiffs state valid claims for negligent misrepresentation under New Jersey

law.  New Jersey law recognizes a cause of action for negligent misrepresentation by investors – such as Plaintiffs – who rely on a company's SEC filings when purchasing the company's securities.  Accordingly, Defendants' partial motions to dismiss should be denied.

## BACKGROUND

Plaintiffs' claims arise from the unprecedented meltdown of Valeant, a (formerly) $90 billion drug company.  Unbeknownst to Plaintiffs and the rest of the market, between 2013 and 2015, Defendants Valeant, Pearson and Schiller made material misrepresentations and failed to disclose material facts in order to:  (a) conceal the existence of a network of specialty pharmacies (centered on Philidor) whose sole purpose was to steer patients toward Valeant products even when much cheaper generic alternatives were available; (b) artificially inflate Valeant's revenues and earnings by booking fictitious sales to Philidor; and (c) mislead investors into believing that Valeant's growth derived from organic volume increases when, in fact, such growth was driven primarily by Valeant's unsustainable practice of acquiring medications and drastically increasing their prices.  As the truth was gradually revealed to the market, the price of Valeant securities plummeted from over $250 per share in mid-2015 to under $25 per share by the time the fraud was fully revealed in mid-2016.  Among others, Plaintiffs assert claims against Valeant, Pearson and Schiller under Sections 10(b) and 18 of the Exchange Act, as well as a common law negligent misrepresentation claim.

### A.     Post-October 2015 Disclosures of the Fraud

As discussed more fully below, Defendants contend they have a truth-on-the-market defense because by no later than October 30, 2015, Valeant had disclosed to the market "(1) its ties to Philidor, (2) that it was terminating its relationship with Philidor, (3) that it had lost confidence in Philidor's practices, and (4) that it was conducting an internal investigation of serious allegations concerning Philidor and related accounting."  (Valeant Br. at 22.)  But this

was nowhere near the whole story, particularly when one considers just a sampling of what was

disclosed about Valeant's fraud *after* October 30, 2015:

- After the markets closed on November 4, 2015, *The Wall Street Journal* reported that Pershing Square – one of Valeant's largest shareholders – was considering the removal of Pearson as CEO due to the turbulence surrounding Valeant.  In addition, it was disclosed that the head of Pershing Square, Bill Ackman, had requested that Valeant management "come clean" and disclose the full extent of their knowledge regarding Philidor.  (Rolnick Decl. Ex. A ¶ 171.)

- On November 10, 2015, Valeant held an investor call to provide an update to the market.  During that call, Pearson disclosed that Philidor had committed to cease operations by January 31, 2016, at the latest.  Pearson also revealed the impact that the Philidor scandal was having on Valeant's operations:  "In the very short term, disruption in our dermatology business will be significant.  Last week, we asked Philidor to stop adjudicating claims and to fill all prescriptions at no cost for the week." (*Id*. ¶ 173.)

- On November 12, 2015, *Bloomberg* published an article providing further details on Valeant's relationship with Philidor and how Philidor peddled Valeant products over cheaper generic alternatives.  (*Id*. ¶ 176.)

- On February 19, 2016, several news outlets reported on a Wells Fargo analyst's detailed review of Valeant.  Among other things, the Wells Fargo analyst questioned Valeant's claim that Philidor accounted for only 7% of revenues, given that the unwinding of that revenue from Valeant's financials resulted in a one-third reduction in earnings-per-share.  The analyst also found that Valeant's accounting did not match up to its performance.  Accordingly, the analyst concluded that Valeant was at "substantial risk" of having misstated its financials.  (*Id*. ¶ 181.)

- On February 22, 2016, while the markets were still open, it was reported that Valeant would likely be restating some of its financials based on its internal review of Philidor.  After the markets closed, Valeant issued a press release confirming that it expected to have to restate its financials.  In particular, the Company disclosed that it "currently believes that approximately $58 million of net revenues previously recognized in the second half of 2014 should not have been recognized upon delivery of product to Philidor." (*Id*. ¶¶ 183-84.)

- On March 15, 2016, before the market opened, Valeant announced that it was reducing its financial guidance for 2016 as a result of the termination of its relationship with Philidor, making the materiality of Philidor painfully obvious to investors.  In a release issued that same day, Valeant disclosed $51.3 million in "wind down" costs for Philidor.  (*Id*. ¶ 188.)

The majority of these disclosures were accompanied by substantial drops in the prices of

Valeant's common stock and many of its bond issuances.  Thus, not only was a great deal of new

information released into the market after October 30, 2015, concerning Philidor's practices and its materiality to Valeant, but the need to restate Valeant's financial statements due to its phony sales to Philidor – a significant component of Plaintiffs' fraud allegations – did not even ***begin to be disclosed*** until February 2016.

### B.      Plaintiffs' Section 18 Reliance Allegations

Plaintiffs' Section 18 claims are based on false and misleading statements contained in Valeant's 2013 10-K, 2014 10-K and several 10-Qs issued in 2014 and 2015.  Each of Plaintiffs' Complaints contains detailed allegations concerning Plaintiffs' reliance on these false and misleading statements, identifies those statements with specificity, and lists the dates Plaintiffs made purchases in reliance on these statements.   Taking the Janus Plaintiffs' Amended Complaint as an example, those allegations can be summarized as follows:

During the relevant time period, Plaintiffs' respective portfolio managers made the investment decisions with respect to Plaintiffs' purchases of Valeant securities based on recommendations from Janus's investment analysts.   (Rolnick Decl. Ex. A ¶ 326.)   Factors considered in making such investment decisions included, among other things, Valeant's financial performance and a review of the Company's strengths, weaknesses and opportunities. (*Id*.)  Actual review of, and reliance upon, Valeant's SEC filings was an essential part of Janus's investment process.   (*Id*.)  Prior to Janus purchasing Valeant securities, Janus's analysts actually read, reviewed and relied upon (to the extent each such document existed at the time):

- Valeant's 2013 10-K, including Defendants' statements that:   (a) the financial statements therein were "prepared in accordance with U.S. generally accepted accounting principles"; and (b) "[t]here were no material arrangements determined to be variable interest entities."  (*Id*. ¶ 327.)

- Valeant's 2014 10-K, including Defendants' statements that:   (a) the financial statements therein were "prepared in accordance with U.S. generally accepted accounting principles"; (b) "[t]he consolidated financial statements include the accounts of the Company and those of its subsidiaries and any variable interest

entities ("VIEs") for which the Company is the primary beneficiary"; (c) "[d]uring the year ended December 31, 2014, the Company completed other smaller acquisitions, including the consolidation of variable interest entities, which are not material individually or in the aggregate"; (d) revenues for the quarter ended December 31, 2014 were $2,235.5 million; (e) revenues for the year ended December 31, 2014 were $8,263.5 million; and (f) management had performed an evaluation of Valeant's internal controls over financial reporting and of Valeant's disclosure controls and procedures, and had concluded that such internal controls over financial reporting and disclosure controls and procedures were effective as of December 31, 2014. (*Id.* ¶ 328.)

- Valeant's 3Q2014 10-Q, 1Q2015 10-Q, 2Q2015 10-Q and 3Q2015 10-Q, including Defendants' statements that management had conducted an evaluation over Valeant's disclosure controls and procedures, that such disclosure controls and procedures were effective as of the end of applicable period, and that there had been no changes in Valeant's internal controls over financial reporting that occurred during the applicable period. (*Id.* ¶ 329.)

All of these statements were material to Plaintiffs' decisions to purchase Valeant securities. The preparation of financial statements in accordance with U.S. GAAP not only ensures that those financial statements are accurate, but it allows Valeant's financial performance to be measured against other comparable companies that also prepare their financial reports in accordance with U.S. GAAP. (*Id.* ¶ 330.) Similarly, if Valeant had a relationship with a VIE that was material to Valeant's business, such as Philidor, it was important for Valeant to disclose specific information about that VIE. Without such information, Plaintiffs could not accurately assess the impact of the VIE on Valeant's operations, performance and opportunities. (*Id.* ¶ 331.) The Company's revenues were obviously an important financial metric in measuring Valeant's performance. (*Id.* ¶ 332.) Finally, a lack of effective internal controls over financial reporting increases the likelihood or errors in the Company's financial reports, and a lack of effective disclosure controls and procedures means that material information concerning the Company might never be publicly disclosed. (*Id.* ¶ 333.) Had Defendants disclosed the truth about any of these issues, Plaintiffs would not have purchased the securities (or would not have purchased them at the inflated prices they paid). (*Id.* ¶ 347.)

### C.     Procedural History

In late October 2015, numerous securities class actions were filed against Valeant and other defendants, which the Court subsequently consolidated as *In re Valeant Pharmaceuticals International, Inc. Securities Litigation* under Master File No. 3:15-cv-07658-MAS-LHG. (Rolnick Decl. Ex. B ¶ 2.)  Specifically, the Court's May 31, 2016 Order "consolidated into this action" the four related class actions that were then pending before Court, as well as "[a]ll *securities class actions* subsequently filed in, or transferred to, this District."   (*Id*. ¶ 2(b) (emphasis added).)  Only Valeant-related class actions were to be consolidated; the Order did not address individual actions like those filed by Plaintiffs here.   The class plaintiffs filed a Consolidated Class Action Complaint in June 2016, which the class defendants (including Valeant, Pearson and Schiller) moved to dismiss.  By Memorandum Opinion and Order entered on April 28, 2017, the Court largely denied the class defendants' motions to dismiss.  (Class Dkt. No. 216.)  Most of the class defendants have now filed their answers to the class complaint (*see* Class Dkt. Nos. 230-236), and the Court recently entered a Discovery Confidentiality Order governing document discovery in that case.  (Class Dkt. No. 244).

In addition to the class action, ten individual "opt out" actions have been filed by plaintiffs pursuing their own claims against Valeant and others – including the six actions filed by Plaintiffs who are on this brief.[2]  None of the individual actions is consolidated with either the class action or each other, and they have proceeded on a separate procedural track from the class.

Indeed, while Defendants have attempted at various points in time to explicitly coordinate Plaintiffs' six individual actions with the class action, Plaintiffs have resisted those attempts at every turn.  Defendants initially sought to stay their time to respond to Plaintiffs'

---

[2] By naming only Valeant, Schiller and Pearson, Plaintiffs' six actions have sued a more limited set of defendants than the class plaintiffs and the other four individual actions.

Complaints pending resolution of the motions to dismiss in the class case, which Plaintiffs vigorously opposed and Judge Goodman denied.  (Rolnick Decl. Ex. C; *id.* Ex. D at 4.)  After the Court scheduled oral argument in the class case and the Janus Plaintiffs decided to amend their Complaint, the parties negotiated a new stipulation with a new briefing schedule.  The amended stipulation provided that, if the Court were to decide the class motions before Defendants' opening brief was due, the parties would "negotiate in good faith to determine the effect, *if any*, of the ruling in the Class Action" and adjust the briefing schedule as reasonably necessary.  (Rolnick Decl. Ex. E ¶ 4.)  Believing their cases to be different, Plaintiffs did not agree in advance to be bound by the Court's decision on the motions to dismiss filed in the class action.  Neither did the Defendants.

Following the Court's issuance of its ruling largely sustaining the class complaint, Plaintiffs and Defendants agreed to adjust the briefing schedule once more, with the Defendants agreeing, in the interests of efficiency, to file motions to dismiss against all six of Plaintiffs' actions.  For the interests of convenience, and as a courtesy to the Court, the parties also agreed to conform the briefing schedule to the one agreed between Defendants and the plaintiffs in the other four opt-out actions.  However, as they are different from Plaintiffs' cases, Defendants filed distinct motions to dismiss in those other four actions.

Given the pendency of Defendants' motions, the automatic stay of discovery required by the Private Securities Litigation Reform Act ("PSLRA") is in effect in the individual actions.  Thus, although the class action appears to be moving into discovery, the individual actions remain on a different procedural track.  There also is no order in effect coordinating discovery and other pretrial proceedings between the class action and the individual actions, or among the various individual actions.

8

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rules 8 and 12(b)(6), a plaintiff need only plead enough facts to make the claim "plausible," to "raise a right to relief above the speculative level," and "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007).  In considering the motion, the Court must accept all of a plaintiff's well-pled factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

**ARGUMENT**

**I.    PLAINTIFFS HAVE ADEQUATELY PLED ACTUAL RELIANCE UNDER SECTION 18 OF THE EXCHANGE ACT**

In Count III of their respective Complaints, Plaintiffs assert a Section 18 claim against all Defendants for material misstatements and omissions in Valeant's 2013 10-K, 2014 10-K and numerous 10-Qs.  Under Section 18 of the Exchange Act, any person who purchases a security in reliance on a false or misleading statement of a material fact included in any document filed pursuant to the Exchange Act may sue any person who made that statement or "cause[d]" it to be made.  15 U.S.C. § 78r(a).  Unlike Section 10(b), a Section 18 plaintiff "bears no burden of proving that the defendant acted with scienter or any particular state of mind."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006).  Instead, to escape liability, the defendant must prove by way of an affirmative defense that it "acted in good faith and [has] no knowledge that such statement was false or misleading."[3]    *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 193 (1st Cir. 2005) (quoting 15 U.S.C. § 78r(a)).  Furthermore, the "fraud

---

[3] The scope of what a defendant needs to prove in order to establish its good faith defense under Section 18 is not at issue on this motion.  Suffice it to say, Plaintiffs disagree with Valeant's reading of the authorities it cites concerning the relationship between that defense and scienter. (Valeant Br. at 7 n.6.)  But that dispute is for another day.

on the market" presumption commonly used in Section 10(b) class actions is not sufficient for liability under Section 18. Instead, a Section 18 plaintiff must plead that it actually read and relied on the false and misleading statements at issue – so-called "eyeball" reliance. *See Suprema*, 438 F.3d at 283; *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 161 (2d Cir. 2012).

Defendants argue that Plaintiffs' actual reliance allegations are insufficient to state a Section 18 claim. (Valeant Br. at 8-11; Schiller Br. at 3.) Defendants are wrong. As a preliminary matter, Plaintiffs' reliance allegations are governed by Rule 8's plausibility standard. Defendants concede that Plaintiffs need not plead scienter to state a Section 18 claim (Valeant Br. at 7 n.6), and they have not even attempted to argue that Plaintiffs' Section 18 claim "sounds in fraud." Furthermore, with respect to Section 18 claims, the only applicable pleading requirements from the PSLRA are those pertaining to the identification of the false statements being sued upon. *See LLDVF, L.P. v. Dinicola*, No. 09-cv-1280-JLL-CCC, 2010 WL 3210613, at *10 (D.N.J. Aug. 12, 2010) (discussing the scope of the PSLRA's application to Section 18). The PSLRA does not impose a heightened pleading standard for the reliance element.

In claiming that Plaintiffs must "link" the misstatements on which they relied to specific purchases of Valeant securities on a transaction-by-transaction basis (Valeant Br. at 8-10), Defendants are attempting to fashion a pleading standard that does not exist under the law of this Circuit. The leading authority is the Third Circuit's *Suprema* decision. In that case, the plaintiffs argued that they had stated a Section 18 claim by alleging they read and relied on each document that contained a misrepresentation or omission. 438 F.3d at 283. The Third Circuit rejected this argument, holding that the "plaintiffs were required to plead actual reliance *on specific statements* contained in the SEC filings at issue." *Id.* (emphasis added). Merely pleading reliance on the entire SEC filing is not enough. Allegations that a plaintiff relied on

specific false statements are necessary to supply the requisite "causal nexus between their purchase of securities and [those] specific statements." *Id*. at 284.  Because the plaintiffs' complaint "failed . . . to plead facts probative of their actual reliance on any specific false statements contained in those filings," the Court of Appeals affirmed the dismissal of their Section 18 claim. *Id*.

District Courts in this Circuit have uniformly interpreted *Suprema* as requiring only that a Section 18 plaintiff identify the specific misrepresentations that he actually read and relied upon in making the decision to purchase the defendant's securities. *See In re Able Labs. Sec. Litig.*, No. 05-cv-2681-JLL-JAD, 2008 WL 1967509, at *26 (D.N.J. Mar. 24, 2008) ("Plaintiff alleges specific statements made on a specific form that was filed with the SEC.  Furthermore, Plaintiff pleads that the statements were read and relied upon in connection with the purchase of Able securities [ ], thus satisfying the actual reliance requirement."); *Witriol v. Conexant Sys., Inc.*, No. 04-cv-6219-SRC-CCC, 2006 WL 3511155, at *7 (D.N.J. Dec. 4, 2006) ("Plaintiffs allege reliance on false statements, but state only generalizations about the subject matter of the statements.  No specific false statements are identified.  Plaintiffs have pled no facts probative of their actual reliance on specific false statements contained in the filings.  This is the kind of cursory pleading that the Third Circuit found insufficient in *Suprema*."); *Dinicola*, 2010 WL 3210613, at *11 (dismissing Section 18 claim because the plaintiff did not "identify which statements form the basis for each claim against each defendant.  Nor does it state that it actually relied on those specific statements.  Any amendment should clearly identify the specific statements which form the basis of Plaintiff's § 18 claims and on which Plaintiff actually relied."); *WM High Yield Fund v. O'Hanlon*, No. 04-cv-3423, 2005 WL 6788446, at *10-11 (E.D. Pa. May 13, 2005) (holding that complaint alleging that "Plaintiffs and their agents

11

specifically read and relied on the financial information contained in the Company's Form 10-K filings, including Deloitte's audit opinions, as well as DVI's Form 8-K filings, not knowing that they were false and misleading" was sufficient to state a claim under Section 18); *see also Zazzali v. Alexander Partners LLC*, No. 12-cv-828, 2013 WL 5416871, at *9 n.12 (D. Del. Sept. 25, 2013 (finding actual reliance allegations sufficient to plead a Section 10(b) claim under *Suprema* because "[the plaintiff], in addition to alleging generally that the investors received the documents containing the supposed misrepresentations, . . . has identified the specific statements at issue and plead that the investors relied on those particular misrepresentations.").

No Court in the Third Circuit has adopted Defendants' proposed "linkage" requirement. To the contrary, Courts here have consistently held that "[r]equiring plaintiffs to link particular misrepresentations with particular trades in their allegations of direct reliance would impose additional burdens without significantly improving the quality of notice to defendants and without affording much added protection from reputation-endangering and extortionate frivolous suits." *O'Hanlon*, 2005 WL 6788446, at *11 (quoting *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 678 (E.D. Pa. 2004)).   Courts in other jurisdictions that have considered the pleading standard for Section 18's reliance element are in accord.   *See, e.g., Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 55 (E.D.N.Y. 2011) ("With regard to actual reliance, Maverick alleges that it read and/or listened to and relied upon the defendants' false and misleading statements before investing tens of millions of dollars in Comverse shares. . . . This alone is a sufficient allegation of actual reliance for purposes of surviving a motion to dismiss."); *In re MDC Hldgs. Sec. Litig.*, 754 F.Supp. 785, 798 (S.D. Cal. 1990) ("Accordingly, in order to state a § 18 claim, a plaintiff must show that she purchased or sold a security in reliance on the alleged misstatement.   Plaintiff must allege that

she actually read a copy of the filed document."). Indeed, in *Gould*, the Second Circuit allowed a Section 18 claim to survive ***summary judgment*** where the plaintiff's employee could not even recall whether she read the audit opinion at issue, but merely testified it was her "practice" to review such documents in deciding to recommend stocks for purchase. 692 F.3d at 161. If that was enough to get by summary judgment, Plaintiffs have certainly alleged sufficient facts concerning their reliance to survive a Rule 12(b)(6) motion.

Plaintiffs have plausibly pled "eyeball" reliance on the false statements in Valeant's 2013 10-K, 2014 10-K and 10-Qs in accordance with the *Suprema* standard. In making their decisions to invest in Valeant's stock and debt, Plaintiffs allege that, acting through flesh-and-blood human beings, they actually read, reviewed, and relied on Defendants' materially misleading statements – which are specifically identified and detailed in each of the Plaintiffs' Complaints. (Rolnick Decl. Ex. A ¶¶ 326-34, Ex. F ¶¶ 240-44, Ex. G ¶¶ 223-27, Ex. H ¶¶ 309-17, Ex. I ¶¶ 228-32, Ex. J. ¶¶ 309-17.) Exhibits to each of the Complaints list the specific dates on which Plaintiffs purchased Valeant securities in reliance on these false and misleading statements. Plaintiffs further explain why each identified false statement was material to their respective investment decisions, and assert they would not have bought the securities had they known the truth. (*Id.*.) Plaintiffs nowhere attempt to rely on the "fraud-on-the-market" presumption or any other theory of constructive reliance for their Section 18 claims. Nothing more is required to plead actual reliance under *Suprema*. *See, e.g.*, *Able Labs.*, 2008 WL 1967509, at *26.

At bottom, in support of their argument that the Section 18 claim is inadequately pled, Defendants rely on two decisions from outside this Circuit that are inconsistent with *Suprema*. (Valeant Br. at 8-9 (citing *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 995 F. Supp. 2d 291 (S.D.N.Y. 2014), and *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu*

13

*CPA, Ltd.*, 33 F. Supp. 3d 401 (S.D.N.Y. 2014)).)   Both cases are inapposite because they (i) applied Rule 9(b)'s particularity standard to the reliance allegations in each case, rather than the Rule 8 plausibility standard applicable here, and (ii) applied a requirement that plaintiffs plead, transaction-by-transaction, which specific statements they relied upon (and how they relied upon them) in making each purchase – a requirement that does not exist in this Circuit and, as *Maverick Fund* makes clear, has not even been accepted by the federal courts in New York. *Compare Bear Stearns*, 995 F. Supp. 2d at 309, *and Special Situations Fund*, 33 F. Supp. 3d at 444-45, *with Maverick Fund*, 801 F. Supp. 2d at 55.   Moreover, unlike here, in *Bear Stearns* the plaintiff did not even "identify a particular transaction that it allegedly made in reliance on the [10-K] or any other document."   995 F. Supp. 2d at 309.

Contrary to Defendants' *ipse dixit*, there is nothing "implausible" about Plaintiffs' reliance on the specific misstatements identified in this case.   (*See* Valeant Br. at 10.)   Not only did Valeant repeat many of these falsities in filing after filing, but they went to the very core of Valeant's business and implicated the very integrity of its financial statements.   Investors routinely look at more than just the company's most recent SEC filing when making purchase decisions; there is thus nothing suspect about Plaintiffs' allegations that they read and relied on Valeant's earlier filings, in addition to its most recent, when deciding to buy Valeant securities. It is perfectly rational for any investor – whether or not "large" and "sophisticated" – to refuse to buy stock in a company that publicly admits its financial statements have not been prepared in accordance with GAAP, or that its system of internal controls suffer from material weaknesses, or that its revenues have been artificially inflated by sham sales, or that it has been concealing the existence of a material VIE that has been helping it sell drugs fraudulently.   And all of the Plaintiffs here have specifically alleged that they would not have purchased Valeant stock (or

would not have bought at the prices offered) had they known the truth about each of these matters.  Defendants cannot prevail on a Rule 12(b)(6) motion by simply disputing Plaintiffs' allegations.

Even if Rule 9(b) applied to Plaintiffs' reliance allegations (which it does not), the result would be the same.  Rule 9(b) simply does not require the level of detail that Defendants demand.  *See Able Labs.*, 2008 WL 1967509, at *26 (holding that "even applying the heightened pleading standard of FED. R. CIV. P. 9(b) to this claim under § 18, Plaintiff has pled adequately a violation ***by identifying specific statements and pleading actual reliance on those statements***" (emphasis added)); *Maverick Fund*, 801 F. Supp. 2d at 54 (holding that Rule 9(b) did not require plaintiffs "to plead the specific details of each purchase and sale of Comverse stock during the relevant period" and that such specifics about the trades, "while relevant to the issue of damages, is not a matter of concern at this stage").  Uncovering specific factual information about Plaintiffs' particular trades is what discovery is for.

Finally, Defendants' astute observation that the exhibits to many of the Plaintiffs' Complaints list purchases made before the first alleged Exchange Act filing is a red herring.  (*See* Valeant Br. at 10-11; Schiller Br. at 3.)  In connection with their Section 18 claims, Plaintiffs' Complaints specifically allege that they relied on each of Valeant's Exchange Act filings "to the extent each such document was on file with the SEC at the time."  (Rolnick Decl. Ex. A ¶ 334, Ex. F ¶ 244, Ex. G ¶ 227, Ex. H ¶ 317, Ex. I ¶ 232, Ex. J. ¶ 317.)  The implication of this allegation is clear:  Plaintiffs did not rely on any such document before it was actually filed, meaning that it did not actually rely on any Exchange Act filing in making purchases of Valeant securities before the first such filing (the 2013 10-K) was filed on February 28, 2014.  Far from making "impossible" allegations of having relied on documents before they were filed

(Valeant Br. at 10), Plaintiffs alleged nothing of the sort.  As the Complaints themselves make clear, Plaintiffs' purchases made before February 28, 2014 are not encompassed within their Section 18 claims, and were never intended to be.

## II.   PLAINTIFFS' SECTION 18 CLAIMS ARE TIMELY

Defendants also argue that, as to any securities purchases made more than three years before the Incline Plaintiffs, VALIC Plaintiffs and Janus Plaintiffs respectively filed suit, those Plaintiffs' Section 18 claims (for those purchases only) are time-barred by what they contend is Section 18's three-year "statute of repose."  (Valeant Br. at 11-12.)

The problem with this argument is that, under the test the Supreme Court recently clarified, Section 18's three-year limitations period is not a statute of repose.  *See CALPERS v. ANZ Sec., Inc.*, 137 S.Ct. 2042, 2049-50 (2017).   A statute of repose runs from "the date of the last culpable act or omission of the defendant." *Id*. at 2049.  But Section 18's three-year period does not do that; it runs from the accrual of the cause of action.  *See* 15 U.S.C. § 78r(c) (Section 18 claims must be filed "within three years *after such cause of action accrued*." (emphasis added)).  This characteristic of the statute is effectively dispositive:  the three-year limitations period under Section 18 is not a statute of repose.  *See CALPERS*, 137 S.Ct. at 2049 (holding that the three-year period 15 U.S.C. § 77m is a statute of repose because, unlike Section 78r(c), it "runs from the defendant's last culpable act (the offering of the securities), not from the accrual of the claim (the plaintiff's discovery of the defect in the registration statement). . . . [T]his point is close to a dispositive indication that the statute is one of repose.").  Although Defendants are correct that the three-year limitations period under Section 18 has been characterized as a statute of repose in numerous judicial decisions, those decisions cannot stand in light of *CALPERS*. Section 18's three-year period is a run-of-the-mill statute of limitations that is subject to tolling.

The practical effect of this is that, to the extent untimely, the Incline Plaintiffs', VALIC Plaintiffs' and Janus Plaintiffs' Section 18 claims have been tolled during the pendency of the class action, which was filed in October 2015, under the *American Pipe* doctrine. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action"); *Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, No. 16-cv-80056, slip op. at 23-25 (S.D. Fla. June 29, 2016) (holding that pendency of class action tolled statute of limitations on opt out plaintiffs' Section 18 claims, even though class did not assert a Section 18 claim) (attached as Ex. K to Rolnick Decl.). *Cf. CALPERS*, 137 S.Ct. at 2055 (holding that statute of repose cannot be tolled under *American Pipe*). As numerous courts have held, "*American Pipe* tolling is properly extended where as here the individual claims involve the same 'evidence, memories, and witnesses' as are involved in the putative class action." *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528 (M.D. Fla. 1989) (quoting *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987)). Here, Plaintiffs' Section 18 claims arise from many of the same misrepresentations in the same public filings alleged by the class. Accordingly, *American Pipe* tolling is applicable, and none of Plaintiffs' Section 18 claims are untimely.[4]

## III.   UNDER SECTION 10(B), THE FRAUD-ON-THE-MARKET PRESUMPTION CONTINUES TO APPLY FOR SECURITIES PURCHASES MADE AFTER OCTOBER 30, 2015

Relying on the so-called "truth on the market" defense, Defendants contend that the

---

[4] Contrary to Defendants' assertion (Valeant Br. at 12-13 n.9), none of the statements in the 10-Qs for which Plaintiffs seek to hold Defendants responsible under Section 18 constitutes financial information required by Part I of the Form 10-Q. Moreover, Schiller's contention that he is not liable under Section 18 (and for negligent misrepresentation) for misstatements in Valeant quarterly reports filed after he resigned as CFO (Schiller Br. at 4-5) is misplaced because Schiller remained a Director of Valeant when those reports were filed, and thus still "cause[d]" such statements to be made. *See* 15 U.S.C. § 78r(a).

Section 10(b) claims asserted by the Discovery Plaintiffs, the BlueMountain Plaintiffs, the VALIC Plaintiffs, and the Janus Plaintiffs should be dismissed as to purchases of securities made after October 30, 2015.  (Valeant Br. at 19-22; Schiller Br. at 2-3.)  In Defendants' view, the release of certain information into the marketplace by that date negates the fraud-on-the-market presumption of reliance for any purchases made after that date.  That is not so.

As a preliminary matter, this argument has already been considered and effectively rejected by this Court.  In moving to dismiss the class complaint, Defendants argued that the class had failed to plead loss causation after October 30, 2015, because the truth had supposedly been fully disclosed by that point.  (Class Dkt. No. 167-1 at 62 (arguing that "any supposed omission concerning Philidor was fully disclosed by October 30, 2015").  However, this Court denied Defendants' motion to dismiss based on a failure to plead loss causation.  *Valeant*, 2017 WL 1658822, at *12.  Defendants' "new" reliance argument is a thinly-veiled attempt to repackage their previously-rejected loss causation argument, and should be rejected as such.

In any event, Defendants have not even come close to conclusively establishing this highly fact-specific affirmative defense.  Under the fraud-on-the-market presumption, a Section 10(b) plaintiff "is entitled to a presumption of reliance if he bought securities in an efficient market," as "the price of the security is assumed to have incorporated the alleged misrepresentations of the defendant."  *Pinker v. Roche Hldgs.*, 292 F.3d 361, 373 (3d Cir. 2002).  Plaintiffs here have invoked this presumption in their respective Complaints in order to plead the reliance element of their Section 10(b) claims.  (*See, e.g.*, Rolnick Decl. Ex. A ¶¶ 262-265.)

As recently summarized by Judge Linares:

> The "truth on the market" defense recognizes that a statement or omission is materially misleading only if the allegedly undisclosed facts have not already entered the market.  To prevail on a "truth on the market" defense at the motion to dismiss stage of the

> litigation defendants must establish that defense as a matter of law
> on the basis of the allegations of the Amended Complaint.

*In re Enzymotec Sec. Litig.*, No. 14-5556 (JLL) (MAH), 2015 WL 8784065, at *16 (D.N.J. Dec.

15, 2015) (citations and alterations omitted).  The theory underlying this defense is that, in an

efficient market, the stock price will reflect all publicly-available information – good and bad,

fraudulent and corrective.  *See generally In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 269-

71 (3d Cir. 2005) ("*2005 Merck*").  Thus, if the truth has been disclosed before a plaintiff buys

the stock, then the stock price at that point reflects the effects of the truthful disclosure, no fraud-

induced artificial inflation exists, and the plaintiff cannot claim to indirectly rely on the

defendant's misrepresentation by relying on the integrity of the stock price.  However, the truth-

on-the-market defense is intensely fact-specific and, given the requirement that plaintiffs' well-

pled allegations are afforded a presumption of truth, is seldom appropriate for resolution at the

pleadings stage.  *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("The truth-

on-the-market defense is intensely fact-specific and is rarely an appropriate basis for dismissing

a § 10(b) claim for failure to plead materiality."); *Enzymotec*, 2015 WL 8784065, at *16

(declining to apply defense on a motion to dismiss given the Court's "duty to accept all factual

allegations as true and to construe the Amended Complaint in a light most favorable to Lead

Plaintiffs"); *In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*, MDL No. 1658 (SRC), 2011

WL 3444199, at *35 (D.N.J. Aug. 8, 2011) ("*Merck*") (noting "fact-intensive" nature of the

truth-on-the-market defense and refusing to find it established on the pleadings).

      In order to prevail on a motion to dismiss by invoking the truth-on-the-market defense, a

defendant must show that "the company's SEC filings or other documents disclose the very

information necessary to make their public statements not misleading."  *Lovallo v. Pacira*

*Pharmaceuticals, Inc.*, No. 14-cv-06172-WHW-CLW, 2015 WL 7300492, at *9 (D.N.J. Nov.

18, 2015) (quoting *Wallace v. Systems & Computer Technology Corp.*, 1997 WL 602808, at *10 (E.D. Pa. Sept. 23, 1997)).  In addition, the defendant must "demonstrate that any such corrective information had been conveyed to the public 'with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by' the alleged misstatements." *Merck*, 2011 WL 3444199, at *35 (quoting *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989)); *see also Lovallo*, 2015 WL 7300492, at *9.  Even where a defendant can show that a fraud has been ***partially*** disclosed before a plaintiff's stock purchases, the truth-on-the-market defense is still inapplicable unless and until ***the entirety*** of the defendant's fraudulent activities has been disclosed.  *Pinker*, 292 F.3d at 374 (reversing dismissal of complaint because "although the truth about Roche's anti-competitive activities might have *begun* to emerge to both Pinker and the market on March 12, 1999, the full extent of Roche's illegal activities was not disclosed until May 20, 1999."); *Argent Convertible*, 315 F. Supp. 2d at 678 ("Argent's case is indistinguishable from *Pinker* because, although Rite Aid had partially disclosed its alleged fraud before September 22, 1999, it did not advise investors not to rely on any of its previous disclosures until November 10, 1999.").

Defendants' purported truth-on-the-market argument fails these tests.  Its most significant flaw is its failure to account for the fact that the need to restate Valeant's financial statements due to phony sales to Philidor was not disclosed until 2016.  In fact, it was not until February 22, 2016, that Valeant disclosed that it expected to have to restate its financials and that it "currently believes that approximately $58 million of net revenues previously recognized in the second half of 2014 should not have been recognized upon delivery of product to Philidor."[5]  (Rolnick Decl.

---

[5] Although Valeant tries to claim otherwise by pointing to the October 21, 2015 Citron report that made vague allegations of channel stuffing by Valeant, that attempt fails.  (*See* Valeant Br. at 6.) Even assuming this short seller report alerted the market ***to the possibility*** that Valeant was

Ex. A ¶¶ 183-84.)  Yet, the fraudulent sales and revenue that needed to be corrected by means of this restatement forms a significant component of the fraud underlying Plaintiffs' claims.  (*See id*. ¶¶ 114-16.)  Because the market did not learn of this fraudulent revenue until February 22, 2016, at the earliest, the market price for Valeant stock prior to that date continued to reflect the effects of those misstatements.  As a result, Defendants have not successfully rebutted the fraud-on-the-market presumption for purchases made after October 30, 2015, even assuming they are correct that the market by that time fully knew of Valeant's relationship with Philidor and the fact that price increases rather than volume constituted the principal driver of Valeant's growth. The ***entirety*** of Defendants' fraudulent activities was not disclosed until well after October 30, 2015.  *See Pinker*, 292 F.3d at 374; *Enzymotec*, 2015 WL 8784065, at \*15-16 (rejecting truth-on-the-market defense at the pleadings stage; although Chinese regulations were publicly-known, their effect on the company was not).

Of course, Defendants are not correct about Philidor either.  Among other things, the disclosures made on November 10 and 12, 2015, as well as February 19 and March 15, 2016, revealed new information to the market concerning Philidor's materiality to Valeant, which caused further artificial inflation to drop out of the stock price.  (Rolnick Decl. Ex. A ¶¶ 173, 176, 181, 188.)  This is consistent with the fraud-on-the-market presumption and supports the

---

improperly booking sales to Philidor, the market price would have adjusted only so much as to account for the risk that possibility might be true.  After Valeant ***admitted*** that, in fact, it had been making phantom sales to Philidor and quantified the amount of those sales, the stock price adjusted further to reflect the effects of this new information.  (Rolnick Decl. Ex. A ¶ 183.)  In other words, a short seller's accusation that Valeant was booking improper sales to Philidor hardly constituted the "whole truth" about that subject.  *See Merck*, 2011 WL 3444199, at \*35 ("Merck's [truth-on-the-market] argument misses the mark because the fraud alleged is not focused on Merck's concealment of the possibility of Vioxx's prothrombotic qualities.  Rather, the fraud is premised on Merck's representations that in its view, and based on its data, Vioxx was not prothrombotic.").  To the contrary, the whole truth was not disclosed until Valeant admitted what had happened and restated its financial statements.  That did not occur until 2016.

inference that the whole truth about Philidor had not been disclosed to the market by October 30, 2015. Thus, purchases made after October 30, 2015 were still executed at a price that reflected Valeant's misrepresentations, and Plaintiffs could still rely on those representations by relying on the integrity of the stock price. Defendants' truth-on-the-market defense fails.

The three decisions on which Defendants principally rely are not to the contrary. In *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) (cited in Valeant Br. at 20), the company announced "that it had uncovered accounting irregularities" and specifically "warned investors not to rely on its prior financial statements and auditor's reports when making an investment decision." *Id.* at 181. Common sense dictates that public investors can no longer continue relying on a company's financial statements when the company itself has told them not to do so. But that did not happen in the case at bar; Valeant did not advise investors not to rely on its financial statements until 2016. In *Lovallo* and *Discovery* (cited in Valeant Br. at 20-21), *all* of the information that plaintiffs claimed had been concealed was actually disclosed and publicly-available during the class period. *Lovallo*, 2015 WL 7300492, at *9-10; *In re Discovery Labs. Sec. Litig.*, No. 06-cv-1820, 2006 WL 3227767, at *11 (E.D. Pa. Nov. 1, 2006). That is why the truth-on-the-market defense succeeded on the pleadings in those cases. But, again, that is not the case with Valeant – the market still had a great deal to learn about Valeant's fraud after October 30, 2015, as new corrective information continued to be disclosed well into 2016. Consequently, Defendants' motion should be denied.

## IV. SLUSA HAS NO APPLICATION TO PLAINTIFFS' INDIVIDUAL ACTIONS

Defendants' argument that Plaintiffs' negligent misrepresentation claims (Count IV of their respective Complaints) are preempted by SLUSA is likewise without merit. (Valeant Br. at 13-17; Schiller Br. at 4.) Plaintiffs' individual actions are not part of a "covered class action"

under SLUSA, which means that statute has no effect on their negligent misrepresentation claims.  This result is supported by the statute's text and purpose – as well as common sense.

SLUSA's objective is to prevent class plaintiffs from circumventing the PSLRA's pleading requirements for securities fraud by filing class action suits in state court under state law.  *See Merrill, Lynch, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86-87 (2006).  To that end, where a "covered class action" has been filed in or removed to federal court, SLUSA mandates dismissal of all state law claims asserted in that action that allege a misrepresentation or omission in connection with the purchase or sale of a "covered security."  *See* 15 U.S.C. § 78bb(f)(1).[6]  As construed by the Supreme Court, "SLUSA does not actually pre-empt any state cause of action," but rather "simply denies plaintiffs the right ***to use the class-action device*** to vindicate certain claims."  *Dabit*, 547 U.S. at 87 (emphasis added).  Importantly, the statute "***does not deny any individual plaintiff***, or indeed any group of fewer than 50 plaintiffs, ***the right to enforce any state-law cause of action*** that may exist."  *Id*. (emphasis added).

As relevant here, a "covered class action" includes any "group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are ***joined, consolidated, or otherwise proceed as a single action for any purpose***."  15 U.S.C. § 78bb(f)(5)(B)(ii) (emphasis added).  Although their papers are a little unclear on this point, Defendants appear to argue that Plaintiffs' six lawsuits fall within this definition because they are being "coordinated" with the other four individual actions, as well as with the class action, which collectively seek damages on behalf of more than fifty persons.  (*See* Valeant Br. at 15-16.)  Defendants' argument rests on numerous incorrect assertions of both law and fact.

---

[6] Because Plaintiffs' federal claims arise under the Exchange Act, we have cited to the version of SLUSA codified under that statute.

The plain language of the statute indicates that it applies only to suits that are "joined" or "consolidated" or are related to each other in a way that is similar to being "joined" or "consolidated."  Under the *ejusdem generis* canon of statutory construction, "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Yates v. United States*, 135 S.Ct. 1074, 1086 (2015) (quotation omitted); *see also Begay v. United States*, 553 U.S. 137, 142-43 (2008); *Handron v. Sec. Dept. of Health & Hum. Svcs.*, 677 F.3d 144, 152 (3d Cir. 2012).  *Ejusdem generis* prevents the literal breadth of the more general phrase from swallowing whole, and thereby rendering superfluous, the specific enumerated statutory examples.  *See CSX Transp., Inc. v. Alabama Dept. of Revenue*, 131 S.Ct. 1101, 1113 (2011).

Applying the *ejusdem generis* canon to 15 U.S.C. § 78bb(f)(5)(B)(ii), lawsuits "otherwise proceed as a single action for any purpose" only when they are related to each other in a way that is similar to being "joined" or "consolidated."  The ordinary meaning of both "joinder" and "consolidation" involve uniting two or more lawsuits into a single lawsuit.  *See* BLACK'S LAW DICTIONARY 309 (6th ed. 1990) ("Consolidation of Actions" means the "***act or process of uniting several actions into one trial and judgment***, by order of a court, where all the actions are between the same parties, pending in the same court, and involving substantially the same subject-matter, issues and defenses[.]" (emphasis added)); *id*. at 836 ("Joinder" means "***Joining or coupling together; uniting two or more constituents or elements in one; uniting with another person in some legal step or proceeding; union; concurrence.***" (emphasis added)).  Under *ejusdem generis*, the "otherwise proceed" language in the "covered class action" definition's catch-all phrase must be construed as having a similar meaning.  Were it to be

interpreted as encompassing procedural relationships between lawsuits short of actually uniting them into a single suit – such as loosely "coordinating" them with common briefing schedules and the like – then Congress's specific enumeration of "joined" and "consolidated" would be swallowed whole and rendered superfluous.   *See Yates*, 135 S.Ct. at 1086-87.

Thus, without formal consolidation or joinder of an individual action with a "covered class action," there is no SLUSA preemption.  *See Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 593-94 (S.D.N.Y. 2012) ("[B]ecause Liberty Media's suit was no longer consolidated with the Class Action, it could not be considered part of such a class action – by definition.  Vivendi's motion for partial judgment based on SLUSA preemption, then, must be denied."); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 266 (S.D.N.Y. 2012) (denying reconsideration); *Ventura v. AT&T Corp.*, No. 05-cv-5718, 2006 WL 2627979, at *1 (S.D.N.Y. Sept. 13, 2006) (holding that individual action proceeding "on a separate procedural track" from class action was not part of a "covered class action" for SLUSA purposes); *see also Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1347 (11th Cir. 2008) (holding that plaintiff might have avoided SLUSA preemption by "argu[ing] to the district court that consolidation [with a class action and another action] was inappropriate because the joinder for discovery purposes would result in SLUSA preclusion").[7]

---

[7] The Courts in both *Stichting* and *Amorosa* – the two cases on which Defendants principally rely – failed to apply the appropriate canon of construction.  (*See* Valeant Br. at 15 (discussing *Stichting Pensioenfonds ABP v. Merck & Co.*, No. 05-cv-5060-SRC, 2012 WL 3235783, at *14 (D.N.J. Aug. 1, 2012), and *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 375 (S.D.N.Y. 2010).)  In the *Amorosa* Court's view, as followed by *Stichting*, interpreting the "otherwise proceed" phrase as limited to actions that are formally joined or consolidated would render that phrase redundant.  But, as *Yates* and related cases make abundantly clear, that is not the case with enumerated statutory lists like the one here that are subject to the *ejusdem generis* canon. By interpreting the "otherwise proceed" phrase to encompass lawsuits that are merely "coordinated for pre-trial purposes," the *Amorosa* and *Stichting* Courts rendered the enumerated terms "joined" and "consolidated" superfluous.  If lawsuits only need to be loosely coordinated

Accordingly, the common law negligent misrepresentation claims pled in Plaintiffs' separate, individual actions are not subject to dismissal under SLUSA.  As the procedural history set out above makes clear, it is beyond cavil that (i) none of Plaintiffs' six individual actions is consolidated for any purpose with the class action, the other four individual actions or, for that matter, even each other; and (ii) Plaintiffs' individual actions are on a separate procedural track from the class action and are not even being "coordinated" with that action or the other individual actions.   Indeed, since the inception of these cases, Plaintiffs have resisted Defendants' attempts to formally coordinate them with the class action through a stay of proceedings or otherwise.  SLUSA, therefore, does not apply.

In light of the correct interpretation of SLUSA's "covered class action" definition and the undisputed procedural history of these cases, Defendants' arguments for why Plaintiffs' actions are still part of a "covered class action" are appallingly weak.  Simply having multiple cases assigned to the same judge as "related" is light years away from "coordination," let alone the formal "joinder" or "consolidation" that SLUSA requires.  (*See* Valeant Br. at 15.)  So is the fact that multiple cases share overlapping factual subject matter, which SLUSA's text makes clear is a necessary, but nowhere near sufficient, condition for a group of lawsuits to be classified as a "covered class action."   15 U.S.C. § 78bb(f)(5)(B)(ii)  (requiring that a group of lawsuits both "involve[e] common questions of law or fact" and "are joined, consolidated, or otherwise proceed as a single action for any purpose").  Finally, the fact that, for the convenience of the Court, Plaintiffs agreed to a briefing schedule on these motions that overlaps with the briefing schedule for motions in the other four individual actions does not suddenly transform ten

---

to "proceed as a single action for any purpose," then there was never any need for Congress to enact the terms "joined" or "consolidated," which would already have been wholly encompassed by these Courts' broad definition of "otherwise proceed as a single action for any purpose."

separate actions into a single one.  (*See* Valeant Br. at 16.)  Indeed, the plaintiffs in those four individual actions are represented by different counsel, have named many defendants not named in Plaintiffs' suits, and will be briefing separately the motions directed at their respective complaints.  The common briefing schedule in no way implies that Plaintiffs' cases and the other separate lawsuits have now been joined together and will proceed "as a single action."

The Supreme Court has held that SLUSA only prevents use of "the class-action device" to bring state law claims for securities fraud, without "deny[ing] any individual plaintiff . . . the right to enforce any state-law cause of action that may exist."  *Dabit*, 547 U.S. at 87.  Where, as here, individual plaintiffs have never attempted to use the "class-action device" to pursue their state law claims, but for efficiency purposes are simply briefing motions to dismiss in their separate actions alongside motions to dismiss filed in other, separate individual actions, there is no basis for construing SLUSA to mandate forfeiture of the individual plaintiffs' rights to pursue state law claims.  *Cf. Liberty Media*, 842 F. Supp. 2d at 593 (de-consolidating cases because of prejudice to individual plaintiffs from loss of their state law claims under SLUSA).

Finally, we note the only thing granting Defendants' motion would accomplish would be to transfer Plaintiffs' state law claims from a federal to a state forum, as nothing under SLUSA would prevent Plaintiffs from simply re-filing their individual common law claims against Defendants in New Jersey state court.  *See Dabit*, 547 U.S. at 87.  Far from vindicating any objective of Congress, Defendants' distorted interpretation of SLUSA under the facts of this case would simply force Plaintiffs to split their state and federal claims between state and federal forums.  That makes absolutely no sense, and cannot be what Congress intended.  *See Liberty Media*, 842 F. Supp. 2d at 593 ("And, in the Court's judgment, forcing the parties to litigate the state-law claims in state court, while continuing to press the federal claims in federal court . . .

would be a most unwise and inefficient use of judicial resources.").

## V.   PLAINTIFFS HAVE ADEQUATELY PLED A CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION UNDER NEW JERSEY LAW

Plaintiffs have also stated a valid claim for negligent misrepresentation under New Jersey law.  (*See* Valeant Br. at 17-19; Schiller Br. at 4.)   *First*, for the same reasons that Plaintiffs have adequately pled the reliance element of their Section 18 claims, they have adequately alleged actual reliance for purposes of negligent misrepresentation.  *See* Point I, *supra*.

*Second*, Courts in this District have held repeatedly that New Jersey law recognizes a cause of action for negligent misrepresentation by public investors who rely on a company's SEC filings when purchasing the company's securities.  *See, e.g.*, *Bogart v. Nat'l Community Banks, Inc.*, No. 90-cv-5032-HAA, 1992 WL 203788, at *10 (D.N.J. Apr. 25, 1992) (holding that general public investors are foreseeable plaintiffs who rely on a company's public statements and may state a claim for negligent misrepresentation under New Jersey law where they allege the "defendants knew the investing public would rely on their statements" in purchasing securities and "were negligent in supplying allegedly false information to the investing public"); *Urbach v. Sayles*, 779 F. Supp. 351, 365 (D.N.J. 1991) (reaffirming earlier holding that under New Jersey law a negligent misrepresentation claim may be brought on behalf of public investors); *In re Midlantic Corp. Sec. Litig.*, 758 F. Supp. 226, 237 n.9 (D.N.J. 1990) (holding same); *see also In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1458-65 (D.N.J. 1987) (granting class certification of negligent misrepresentation claims in securities case).  Indeed, all of these cases were class actions brought on behalf of open-market securities purchasers (as to which, prior to SLUSA, there was no bar to the assertion of state law claims).

These cases are all still good law.  Defendants cite no intervening decision by either the New Jersey Supreme Court or the Appellate Division that calls them into question.  In fact, the

only authority they cite for the proposition that "New Jersey courts do not recognize such claims for securities investors" (Valeant Br. at 18) is *Prudential Ins. Co. of Am. v. Bank of Am.*, Nos. 13-cv-1586-SRC-CLW, 14-cv-4242-SRC-CLW, 2015 WL 502039, at *5-6 (D.N.J. Feb. 5, 2015). But the *Prudential* Court did not even acknowledge, let alone attempt to refute or distinguish, the earlier cases recognizing this cause of action. Nor did it excavate any recent cases from the New Jersey state courts that undermined these earlier decisions. Indeed, the *Prudential* Court relied almost exclusively on its reading of a 1985 New Jersey Supreme Court decision that predates *Midlantic* and its progeny. *Id*. at *5-6 (discussing *People Express Airlines v. Consol. Rail Corp.*, 495 A.2d 107, 116 (N.J. 1985)).

But the Court misread *People Express*. Although the New Jersey Supreme Court in that case certainly expressed reluctance to extend a negligence-based duty for the benefit of persons whose presence in a particular geographic area is "fortuitous," that has nothing to do with the claims of investors who rely on a company's financial statements and other public filings when purchasing the company's securities. Such investors' reliance on a defendant's negligent misrepresentations when buying its stock is not "fortuitous." The very purpose of making such public representations in SEC filings is to induce investors to rely on them and buy (or sell) the company's securities. That is why *Bogart* and the other cases cited above find that such public investors are foreseeable plaintiffs who can sue in negligence, and also why the rationale of those decisions is perfectly in accord with *People Express*. *See, e.g.*, *Bogart*, 1992 WL 203788, at *10.

It is also eminently fair to hold those who negligently make such statements responsible to their investors for the damage they cause. *See People Express*, 495 A.2d at 117 (noting that the "underlying policy of the negligence doctrine" is that "the imposition of liability should deter negligent conduct by creating incentives to minimize the risks and costs of accidents.");

*Highlands Ins. Co v. Hobbs Grp., LLC.*, 373 F.3d 347, 355 (3d Cir. 2004) ("Evaluation of the existence or nonexistence of a duty of disclosure . . . calls for the weighing of factors . . . [of] foreseeability and fairness."); *Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1294 (N.J. 1994) (holding the question of whether a duty exists "is one of fairness and policy that 'involves identifying, weighing, and balancing several factors – the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." (quotations omitted)).  Any concern about "unlimited" liability to public investors is addressed by the actual reliance requirement, which limits the universe of plaintiffs to those who actually read and relied upon the misrepresentations at issue. *See Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000) (discussing reliance requirement for negligent misrepresentation).   Those investors form an "identifiable" class that is "particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted." *People Express*, 496 A.2d at 116; *see also* Restatement (Second) of Torts, § 552.  Publicly-traded companies like Valeant who make periodic public statements to their investors know not merely with "predictability" – but ***with certainty*** – that a class of their investors (usually institutional investors) will actually rely on those statements to buy stock, and will suffer damages if those statements were false and the stock price drops when the truth is revealed.  Such defendants should be held accountable when their negligent falsehoods cause economic damages to these investors.

## CONCLUSION

For the foregoing reasons, this Court should deny in their entirety Defendants' partial motions to dismiss Plaintiffs' Complaints.  To the extent the Court is inclined to grant any portion of Defendants' motions, Plaintiffs respectfully request leave to re-plead.

Dated: July 28, 2017                              Respectfully submitted,

     /s/ Lawrence M. Rolnick

Lawrence M. Rolnick
Marc B. Kramer
Thomas E. Redburn, Jr.
Sheila A. Sadighi
Michael J. Hampson
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Tel. 973.597.2500
Fax 973.597.2400
lrolnick@lowenstein.com
mkramer@lowenstein.com
tredburn@lowenstein.com
ssadighi@lowenstein.com
mhampson@lowenstein.com
*Attorneys for Plaintiffs*

31